

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

ENTERED
02/04/2009

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 08-70002** |
| **GREGORIO B VILLARREAL; dba** | § | **Chapter 13** |
| **GREG'S BALLROOM; aka** | § | |
| **VILLARREAL, ESTELA VILLARREAL,** | § | |
| Debtor(s). | § | **Judge Isgur** |

## MEMORANDUM OPINION RELATING TO OBJECTIONS AGAINST DEBTORS' HOMESTEAD EXEMPTION CLAIMS

### Procedural Background

Gregorio B. Villarreal and Estela Villarreal (collectively "Debtors") jointly filed for chapter 13 relief on January 3, 2008. Debtors scheduled their property located at 4000 W. Expressway 83 in Palmview, Texas as an exempt business homestead (docket no. 141). The property consists of a restaurant and a ballroom known as Greg's Restaurant and Ballroom ("Greg's Ballroom"). Debtors also scheduled their interest in adversary proceeding no. 08-07001 as part of their exempt business homestead (docket no. 141). The adversary proceeding is a state court lawsuit filed by the Debtors against trustee David Showalter and Armando Orta to avoid the pre-petition foreclosure of Greg's Ballroom.

Cindy Boudloche, the Chapter 13 trustee, filed objections to Debtors' claimed exemptions (docket nos. 35, 102). Trustee Boudloche asserts that: (1) Debtors did not use the property as their residence; (2) the claimed exemptions in commercial property and in the contingent, unliquidated adversary claim are not allowable homestead exemptions; and (3) the aggregate amount claimed as exempt by Debtors exceeds the amount allowed under Texas law.

Showalter is trustee for Armando Orta and other parties who hold a third lien on the property as a result of an April 24, 2007 settlement agreement between Mr. Villarreal and the parties. Before the filing of Debtors' bankruptcy petition, Showalter foreclosed on the lien

following Mr. Villarreal's uncured default on the promissory note.  As a party in interest, Showalter also filed an objection to Debtors' claimed exemptions on the grounds that:  (1) Debtors do not own the property due to the pre-petition foreclosure; and (2) prior to the foreclosure sale, the property was not Debtors' homestead (docket no. 31).

Debtors' bankruptcy case was filed in McAllen, Texas and is assigned to Judge Richard Schmidt.  Debtors' adversary proceeding is assigned to the undersigned Judge.  On May 21, 2008, this contested matter was transferred to the undersigned by Judge Schmidt because it involved the same issues pending before this Court in the adversary proceeding (docket no. 91).

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District pursuant to 28 U.S.C. § 1408.

### Prior to the Bankruptcy Petition

Before the filing of Debtors' bankruptcy petition, Mr. Villarreal, individually and d/b/a Greg's Ballroom, was involved in several lawsuits in Harris and Hidalgo Counties.  These lawsuits arose from a failed transaction between multiple parties for the investment, promotion and concert performance of a popular Mexican singer and songwriter, Juan Gabriel.  The concert performance was to take place at Greg's Ballroom.  In the lawsuit, Showalter represented the promotion company, T.N.T. Live Entertainment, Inc., and the promoters, Armando Orta, individually and d/b/a Zarkando Music Entertainment Inc., and Henry Gonzalez.

On April 24, 2007, Roy L. Barnes, counsel for Mr. Villarreal, and Showalter announced in state court onto the record an agreement that would settle all pending claims in all the lawsuits in Harris and Hidalgo Counties.  The essential terms of the settlement agreement are that:  (1)

Mr. Villarreal, and not Mrs. Villarreal, would execute a promissory note in the principal amount of $70,000 at an interest rate of 10% per annum, compounded annually, payable to Showalter as Trustee; and (2) the note would be secured by a deed of trust to be executed by both Debtors. This deed of trust would constitute a third lien on Debtors' property that they now claim as homestead. Barnes and Showalter, alternatively, also read onto the court record payment terms as well as timelines for the execution and delivery of paperwork. Neither expressly declared anything as to the homestead or non-homestead character of the property.

After the state court hearing, the terms of the settlement agreement were memorialized in a writing that was signed by all parties to the contract, except Henry Gonzalez. The memorialized agreement described the encumbered property as 10 acres in Hidalgo County instead of the 24 acres stated in open court. The memorialized settlement agreement contained payment terms, timelines for the execution and delivery of documents, the payment of attorney fees and costs, and provisions for mutual release, indemnity, no admission of liability, warranties and full information, ownership of and authority to settle claims, dispute resolution, and suit dismissal. It also included a merger clause. The settlement agreement makes no mention of whether the property is homestead.

The promissory note, dated April 24, 2007, was executed by Mr. Villarreal. It shows Mr. Villarreal's mailing address as 4000 W. Expressway 83 in Mission of Hidalgo County, Texas. It states that the security for payment of the note is a deed of trust against Greg's Ballroom, the property that Debtors now claim as homestead. The promissory note does not include a disclaimer of homestead.

The deed of trust, dated April 24, 2007, was executed by both Debtors before a notary public.  It shows Debtors' mailing address as 4000 W. Expressway 83 in Mission of Hidalgo County, Texas.  The deed does include a homestead disclaimer.  Paragraph 22 of the deed of trust states:

> Grantor represents that this deed of trust and the Note are given for the following purposes:
>
>> No part of the property is used for residential purposes and is not, in whole or in part the homestead of Grantors.  Grantors acknowledge and represent that the debt evidenced by the Note is used for business purposes for value received by Grantors.

Attached to both the promissory note and the deed of trust is a legal description of the encumbered 10 acres of property.  It is the same property description that Debtors subsequently provided as a legal description of their homestead.

On November 6, 2007, Showalter foreclosed on the lien after Mr. Villarreal defaulted on the promissory note.  Debtors then sued Showalter and Armando Orta in state court for wrongful foreclosure.  A temporary injunction hearing was held on January 2, 2008.  The hearing was to continue on January 4, 2008, but on that day, Debtors removed the state court lawsuit to this Court (adversary proceeding no. 08-07001).

### Evidentiary Hearing and Findings of Fact

On July 30, 2008, the Court held an evidentiary hearing for approximately eight hours to determine Debtors' homestead claims.  The Court heard testimony from 10 witnesses as to the homestead character of Debtors' property.

Greg's Ballroom is a building complex of three connected structures.  The structures consist of a ballroom, a restaurant, 10 restroom facilities, and two shower areas.  The restaurant is housed in the smallest structure located on one side of the building.  The remaining portions of

the complex look like a nondescript commercial warehouse.  On the same property is an outdoor parking lot.

Greg's Ballroom hosts entertainment events such as performances and dances during the week and weekend.  Although most traffic occurs during the evenings, there is also traffic during the day, primarily when people are on the premises to buy tickets.

Debtors and their daughter, Maria Villarreal Hernandez, testified that after having lived together for approximately 14 years with Ms. Hernandez's husband and three children in a six-bedroom house on Veteran's Boulevard, Debtors moved into Greg's Ballroom while Ms. Hernandez and her nuclear family moved to a property on San Jacinto in 2005.  Since 2005, Debtors have lived in the restaurant portion of the building behind a black curtain that concealed their bed and bedroom furniture.  This bedroom area is near Mr. Villarreal's office, which is also located in the restaurant.  They use the shower area in the back of the building, which is inaccessible to visitors.  Except for holidays and special occasions, Debtors have not lived with Ms. Hernandez at her house on San Jacinto.  Debtors admitted that they have kept secret their residence at Greg's Ballroom.  Debtors have a private, close knit family and have few close friends.

Alicia Saldivar, a friend of Mrs. Villarreal for eight years, also testified.  Ms. Saldivar picked up Mrs. Villarreal on a number of occasions for yoga lessons, either before 7:00 a.m or before 6:00 p.m. starting at least in 2006.  Although she never saw Debtors' bedroom behind the black curtain, she understood that Debtors lived at Greg's Ballroom based on Mrs. Villarreal's statement in 2006 that referred to Greg's Ballroom as their home and Mr. Villarreal's statement that the bedroom was behind the curtain.

Showalter testified that prior to settling the lawsuits in Harris and Hidalgo Counties, neither Mr. Villarreal's attorney, Barnes, nor anyone else told him that the property was Debtors' homestead.  Had he known that Greg's Ballroom was Debtors' homestead, he would have never agreed to the settlement agreement.   Prior to the state court hearing when the settlement agreement was announced, Showalter thought that the property was not Debtors' homestead because: (1) Mr. Villarreal testified in his deposition on July 14, 2006 that he was living with his daughter, Ms. Hernandez; (2) county records and real estate records with lenders indicated that the property was not Debtors' homestead, and (3) none of Showalter's clients had ever seen anyone live at Greg's Ballroom.  Showalter did not visit the property or obtain an affidavit by Debtors disclaiming Greg's Ballroom as non-homestead.  Showalter also did not get a title policy on the deed of trust.

Showalter presented four witnesses who testified that based on their individual observations of Greg's Ballroom from the inside or outside of the building during 2005 to 2007, they did not believe anyone lived at Greg's Ballroom.  Various reasons included:    (1) Mr. Villarreal said he lived with his daughter; (2) a lack of clothing, personal effects, and furniture in the visible restaurant portion of the building; or (3) except for when Greg's Ballroom hosted an event, a lack of visitors that would have indicated it as residential property.  One of these witnesses, Officer Jose Lopez, a patrolman for the City of Palmview, testified that while he was inside Greg's Ballroom on an occasion in 2007 to keep the peace while Mr. Villarreal was served papers, he saw some pieces of furniture and children's toys by the black curtain.  However, he never saw a bed or bedroom, and thought it was a storage area behind the curtain.

Miriam Lozano was also called as a witness.  Ms. Lozano is a real estate secretary for Mr. Scott Walsh, an attorney at Kittleman, Thomas & Gonzalez, LLP, who represents Inter National

Bank.  Inter National Bank holds first and second liens on the property.  Part of Ms. Lozano's job duties is to obtain title policies.

In August to September of 2007, Ms. Lozano worked on the closing of Mr. Villarreal's loan application and Debtors' loan restructuring with Inter National Bank.  At the time, Mr. Villarreal wanted to borrow $70,000 to pay Showalter as part of their settlement agreement. This loan was not granted because Ms. Lozano found that there was a homestead issue, even though she recalled that she understood Mr. Villarreal as telling her that he did not own his own home and that he lived with his daughter.  It was pointed out that Ms. Lozano and Mr. Villarreal's conversations were probably in Spanish, and that the word for "live" and for "stay" is the same word in Spanish.  In any event, Ms. Lozano detected a homestead issue which ultimately prevented the approval of the $70,000 loan application.

As for the loan restructuring, Debtors executed a renewal lien on August 30, 2007 securing a pre-existing loan.  In the renewed deed of trust, Debtors disclaimed Greg's Ballroom as homestead.  Paragraph 32 of the deed states:

> Grantors expressly represent that the property hereinabove mentioned and conveyed to Trustee forms no part of any property owned, used or claimed by Grantors as exempted from forced sale under the laws of the State of Texas and Grantors renounce all and every claim thereto under any such law or laws.

However, no homestead designation was made in the deed.  Ms. Lozano testified that a homestead designation would have been a standard clause in the form, such that the omission of such a designation means that she intentionally deleted it.  She could not recall why she did this.

Also non-routine in the loan restructuring documents was Debtors' execution of a separate and second lien to cover the closing costs.  Ms. Lozano testified that there was a problem obtaining a title policy on the closing costs such that a second lien document was required.  Typically, a lien for closing costs would be in the same deed of trust.

After the hearing, the Court ordered the parties to file two sets of briefs, one setting forth the relationship between Texas homestead law, secret homestead usage, estoppel and judicial estoppel, and the other setting forth how Defendant Showalter knew or should have known that the business was Debtors' homestead property.

**Texas Homestead Law Generally**

Homestead is a legal interest in real property created by the Texas Constitution. *Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992); TEX. CONST. art. XVI, § 50. The Constitution protects homesteads against forced sales on mortgages, except for eight specifically authorized instances, such as a deed of trust for purchase money to buy the property or for money to pay taxes on the property. TEX. CONST. art. XVI, § 50. "Because homesteads are favorites of the law," the Court "must give a liberal construction to the constitutional and statutory provisions that protect homestead exemptions." *Bradley v. Pacific Southwest Bank* (*In re Bradley*), 960 F.2d 502, 507 (5th Cir. 1992). This is true even if enforcement of Texas homestead laws would "unwittlingly 'assist a dishonest debtor in wrongfully defeating his creditor.'" *Id.* (quoting *Cocke v. Conquest*, 120 Tex. 43,52, 35 S.W.2d 673, 678 (1931)).

**Initial Burden of Proof**

"It is well settled in Texas that an individual who seeks homestead protection has the initial burden to establish the homestead character of her property." *Bradley*, 960 F.2d at 507 (citing *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 314 (Tex.App.—Houston 1983, writ ref'd n.r.e.); *see also Prince v. North State Bank*, 484 S.W.2d 405, 409 (Tex. Civ. App.—Amarillo 1972, writ ref'd n.r.e.), *Yamin v. Charter Nat'l Bank*, 65 B.R. 938, 941 (Bankr. S.D. Tex. 1986).

"[T]he claimant must 'show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as homestead.'" *Bradley*, 960 F.2d. at 507

(quoting *Sims v. Beeson*, 545 S.W.2d 262, 263 (Tex. Civ. App.—Tyler 1976, writ ref'd n.r.e).

"'Possession and use of land by one who owns it and who resides upon it makes it the homestead *in law and in fact.*'"  *Id.* (quoting *First Interstate Bank v. Bland*, 810 S.W.2d 277, 286 (Tex. App.—Fort Worth 1991, no writ) (emphasis original).  Mere occupancy does not make a property a homestead.  *Yamin*, 65 B.R. at 941.  But, "mere evidence of 'overt acts of homestead usage' is sufficient" to establish a homestead.  *Bradley*, 960 F.2d at 507.  This is because actual homestead use carries a presumption of homestead intention.  *Id.*  Actual use is the "the most satisfactory and convincing evidence of intention."  *Youngblood v. Youngblood*, 124 Tex. 184, 188, 76 S.W.2d 759, 761 (1934).

The Court is convinced by Debtors' evidence that the property in question has been Debtors' homestead since sometime in 2005.  Debtors and their daughter, Ms. Hernandez, credibly testified that in 2005, their shared six-bedroom house on Veteran's Boulevard was foreclosed and they had to find lodging elsewhere.  Ms. Hernandez, her husband, and their three children moved to a three-bedroom house in San Jacinto and they have lived there since with a live-in maid.  Debtors, on the other hand, moved into Greg's Ballroom.  They set up a bedroom in the restaurant portion of the building, concealed behind a black curtain, and have lived there since.  The Court finds that Debtors' actual use of the property as homestead is sufficient to establish the homestead.  *Bradley*, 960 F.2d at 507.

The Court's conclusion is based on the fact that Ms. Hernandez's house is a three-bedroom property with six occupants, without including Debtors.  When Debtors stay the night at their daughter's house on special occasions, there is insufficient room to accommodate everyone at the San Jacinto house.  Either Debtors or Ms. Hernandez and her husband must sleep in the living room.

Also, the Court understands that Debtors have a close and private family, underscored by the facts that Ms. Hernandez visits her parents almost daily, and that Debtors and Ms. Hernandez are involved in each others' lives significantly.  Debtors' reasons for keeping their residence at Greg's Ballroom secret, which involve maintaining a professional atmosphere at their place of business and keeping personal problems private, are not unreasonable.  As Mr. Villarreal testified on the subject, "The least that anyone would know about that would be best."  Although Debtors kept secret their residence at Greg's Ballroom, their residence there was a fact.  This is bolstered by the testimony of Ms. Villarreal's close friend, Ms. Saldivar, who has picked up Ms. Villarreal from Greg's Ballroom before 7:00 a.m. for yoga lessons.

Trustee Boudloche and Showalter both argue in their briefs that in order to establish homestead under Texas law, overt acts of homestead must be "open to view," "open to public view," "open," "apparent," or "observable."  Both cite to the Merriam-Webster Dictionary for these definitions of "overt" as their authority.  The Court rejects these proposed legal standards as Texas courts and law do not require homestead use to be "open to view" or "open to public view."  Rather, "actual use" is required.  *Bradley*, 960 F.2d at 507.  Because Debtors actually used the subject property as homestead starting in 2005, the Court finds that the subject property has been and is Debtors homestead, in fact and in law, since they moved into Greg's Ballroom.

Showalter also argues that "when circumstances of usage at the time the loan is made comport with the parties' representations of non-homestead, a party may not 'impute to [lenders] notice of his own fraudulent purpose to give a worthless lien on a homestead.'" (Citing *Humphreys v. Standard Savings & Loan Ass'n.*, 80 S.W.2d 438, 441 (Tex. Civ. App.—San Antonio 1955, writ ref'd).  While Showalter's legal statement is correct, it does not bear on the question of whether the subject property is, in fact and in law, Debtors' homestead.  Rather, it

bears on the question of whether estoppel should apply.  *See Humphreys*, 80 S.W.2d at 441; *Bradley*, 960 F.2d at 509.  Homestead disclaimers are irrelevant in determining whether the claimant has met the burden of proof.  *Bradley*, 960 F.2d at 509.  A disclaimer "cannot 'change the character of a true homestead.'"  *Id.* (quoting *City Central Bank & Trust Co. v. Byrne*, 47 S.W.2d 432, 434 (Tex. Civ. App.—San Antonio 1932, writ ref'd).

### Validity of Showalter's Lien

The next step in the Court's analysis is whether the Showalter lien on Debtors' homestead property is valid.

Because Debtors have established that the property has been their homestead since 2005, the lien as created in 2007 must be allowable under the Texas Constitution to be valid.  The lien was created to secure payment of a promissory note given as part of a settlement agreement.  As such, it does not fit within one of the eight authorized instances under the Constitution and is therefore invalid.  TEX. CONST. art. XVI, § 50.

However, courts have recognized otherwise constitutionally invalid liens in certain situations by estopping a homestead claimant from asserting a homestead right.  In this case, two estoppel theories are involved:  equitable estoppel and judicial estoppel.

### Objectors' Burden of Proof

As objecting parties, Trustee Boudloche and Showalter have the burden of proof in showing that Debtors' exemption claims should be estopped.  FED. R. BANKR. P. 4003.  They "must carry this burden by a preponderance of the evidence."  *Pequeno v. Schmidt*, 126 F.App'x. 158, 163 (5th Cir. 2005) (citing *In re Park*, 246 B.R. 837, 840 (Bankr. E.D. Tex. 2000) (citing *In re Ciotta*, 222 B.R. 626, 629 (Bankr. C.D. Cal. 1998)).  The Court will first analyze equitable estoppel.

**Equitable Estoppel**

Equitable estoppel requires a showing of five elements:  (1) a false representation or concealment of material facts; (2) made with either actual or constructive knowledge of the truth; (3) to a party without knowledge of the truth or without the means of knowing the truth; (4) with the intention that the false representation or concealment should be acted on; and (5) the party to whom it was made actually relied on or acted on it to his prejudice.  *Gulbenkian v. Penn*, 151 Tex. 412, 418, 252 S.W.2d 929, 932 (1952).  The Texas Supreme Court has also stated that:

> "Before an estoppel can be raised there must be certainty to every intent, and the facts alleged to constitute it are not to be taken by argument or inference.  Nothing can be supplied by intendment.  No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegations or acts.  If an act or admission is susceptible of two constructions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel."

*Id.* (quoting 31 *C.J.S. Etoppel*, § 77, p. 282, et seq.).

In the case of a homestead exemption claim, **"**[m]isrepresentations by a homestead claimant may, under the proper circumstances, create an [equitable] estoppel to the claim." *First Interstate Bank v. Bland*, 810 S.W.2d 277, 283 (Tex. App.—Fort Worth 1991, no writ) (citing *Lincoln v. Bennett*, 138 Tex. 56, 57, 156 S.W.2d 504, 505  (1941)); *Yamin v. Charter Nat'l Bank* (*In re Yamin*), 65 B.R. 938, 942 (Bankr. S.D. Tex. 1986) (citing *Lincoln v. Bennett*, 138 Tex. 56, 156 S.W.2d 504 (1941).

*Bland* sets forth three separate situations in which estoppel might apply:

> (1) [T]he claimant owns only one piece of property, and said property is being used as the claimant's homestead at the time of the mortgage; (2) [T]he claimant owns more than one piece of property at the time of the mortgage, but only one parcel could be the homestead as a matter of law; and (3) [T]he claimant owns more than one piece of property which has been used and occupied as a homestead prior to the time one of them is mortgaged.

*Bland*, 810 S.W.2d at 283 (citation omitted).

Debtors' situation is like the first situation described in *Bland*.  At the time Debtors signed the deed of trust to secure Mr. Villarreal's $70,000 promissory note in 2007, Debtors owned only the subject piece of property.  However, in the deed of trust executed by Debtors, Debtors expressly represented that "[n]o part of the property is used for residential purposes and is not, in whole or in part the homestead of" Debtors.  Although no evidence shows that Debtors' counsel affirmatively made the same representation to Showalter during settlement negotiations, Showalter testified that settlement would not have occurred if it was known that the property was Debtors' homestead or that the lien was otherwise invalid and unenforceable.  Of course, it is apparent, even without Showalter's testimony, that no settlement that included a lien on Greg's Ballroom would have occurred if the parties had recognized that Greg's Ballroom was Debtors' homestead.

The general rule that Texas courts have adopted unanimously in this situation where the claimant owns only one piece of property and occupies it at the time of the mortgage is that "the claimant is not estopped to set up the homestead exemption notwithstanding the declarations in the mortgage contract."  *Id.* at 283 (citing *Texas Land & Loan Co. v. Blabock*, 76 Tex. 85, 89, 13 S.W. 12, 13 (1890); *Ray v. Metzger*, 165 S.W.2d 207, 209 (Tex. Civ. App.—Fort Worth 1942), *aff'd*, 141 Tex. 372, 172 S.W.2d 480 (1943)).  However, this rule is based on the theory that:

> [T]he fact of actual possession and use of the property as a home is of so obvious a nature at the time of the mortgage that the lender cannot close his eyes to the facts.  When the facts of actual possession and use are coupled with the interest in property held by the borrower, the premises become a homestead in fact and in law.  A lender stands charged with notice of the fact of homestead and it matters not what declarations to the contrary the borrower might make.

*Id.* at 283-84.  A corollary of this theory is that "[i]f the homestead claimant contends that the property was being used in connection with his residence, the determining factor is whether the claimant's acts were such as to put a reasonable prudent person on notice that the tract

constituted a part of the homestead." *Prince v. North State Bank*, 484 S.W.2d 405, 411 (Tex. Civ. App.—Amarillo 1972, writ ref'd n.r.e.).

The theory that estoppel should not apply because a lender cannot close his eyes to the facts is inapplicable in this particular situation.  In this case, the "fact of actual possession and usage" was not so obvious.  *Id.*  Instead, the "fact of actual possession and usage" was kept secret by Debtors.  Furthermore, from the outside of the building, there was no indication that Greg's Ballroom, a place of business, was also used as a residence.  The physical exterior of the building looks like a nondescript warehouse, except for the restaurant located on the side.  The presence of visitors was not out of the ordinary for a venue that hosts entertainment events. From the inside of the restaurant, a black curtain concealed the bedroom area where Debtors resided.  The showers Debtors used are located in the back of the building in an area that is inaccessible to visitors.  Although some furniture and children's toys were spotted in the visible area of the restaurant near where the black curtain hung, the presence of these items did not suggest that anyone was living there.  Rather, the area behind the black curtain looked like a storage area.  All these facts go to show that Debtors' use of Greg's Ballroom as a residence, although actual and for homestead purposes, was insufficient "to put a reasonable prudent person on notice" that the property was homestead.  *Prince*, 484 S.W.2d at 411.

This situation here is analogous to cases where "ambiguous possession" exists. "Ambiguous possession" exists where the homestead claimant owns only one piece of property, but does not occupy it.  *Bland*, 810 S.W.2d at 284, 287.  A case in point is *Alexander v. Wilson*. At the time the Wilsons executed a mortgage on their rural piece of property disclaiming it as homestead, the Wilsons owned only that piece of property and lived in town with their son on his property.  *Alexander v. Wilson*, 124 Tex. 392, 393-94, 77 S.W.2d 873, 874 (1935).  While they

lived in town, Mr. Wilson used the farm for cultivation and the raising of livestock. *Id.*  The Wilsons were estopped from asserting their homestead claim against foreclosure because "the visible circumstances at the time of the mortgage were consistent with the declaration" that the rural property was not their homestead and that they had abandoned it.  *Bland*, 810 S.W.2d at 284 (citing *Wilson*, 77 S.W.2d at 874).  Furthermore, Mr. Wilson's use of the farm for raising livestock and cultivation "was not appurtenant to their residence" on the farm.  *Id.*  "Where homestead claimants reside in a city or town, the law does not regard a use of rural land as being a use for the purposes of a home."  *Wilson*, 77 S.W.2d at 874.  Thus, the "only homestead character of land on the farm depended solely on the intention of the mortgagors . . . ."  *Id.*

Debtors' property is not like the Wilsons' rural property because it is commercial.  However, Debtors' property is like the Wilson's property in that they both could have dual purposes.  Debtor's property is commercial, and can be used for business as well as homestead purposes.   Wilson's property is rural, and can be used for farming as well as homestead purposes.  The fact remains, however, that if these properties were not used for homestead purposes, they are characterized as commercial and rural properties, respectively.  They are never characterized as simply residential.  The significance of this point is that unless the homestead use of one if these properties were visible, no one would know nor could know that it were used as such.  The characterization of the inherent purpose of these non-residential properties is presumptively non-homestead.

Thus, in the Wilsons' case as well as in this case, visible use is a determining factor.  The Wilsons' visible use of their rural land was for cultivation and the raising of livestock while Debtors' visible use of their commercial property has been for a restaurant and ballroom business.  In both instances, the visible uses of these properties were consistent with the

declarations that they were non-homestead, particularly when both sets of mortgagees represented that they lived with a child on their child's property.  Even when, unlike the Wilsons, Debtors have been actually living on their property and not in Ms. Hernandez's San Jacinto house, this difference is negligible because their actual use has not been visible.  As a result, the "only homestead character of land . . . depended solely on the intention of" Debtors.  *Id.*  In short, Debtors' actual use of the property as homestead has not made their possession any less ambiguous.

It is sufficient to say that the Court's finding that Debtors' homestead use is problematic to give notice comports with a separate characterization of "dubious usage," as set forth in *Lincoln v. Bennett.  See Lincoln v. Bennett*, 138 Tex. 56, 57, 156 S.W.2d 504, 505 (1941).  *See also First Tex. Joint Stock Land Bank v. Chapman*, 48 S.W.2d 651, 655 (Tex. Civ. App.—Fort Worth 1932, writ dism'd w.o.j.).  "Dubious usage" is similar to "ambiguous possession" in that estoppel should apply to effectuate an otherwise constitutionally invalid lien because of ambiguous occupancy or "dubious usage."  *Id.*  However, "dubious usage" arises in situations where the claimant owns two pieces of property, each of which could be homestead.  *See Carstens v. Landrum*, 17 S.W.2d 803 (Tex. 1929).

The underlying premise in "ambiguous possession" or "dubious usage" cases is that "where the facts known to the mortgagee at the time, and those of which he is required to take notice, are consistent with the declared intention of the mortgagors, their declaration may estop them from asserting their homestead claim."  *Wilson*, 77 S.W.2d at 874.  Put another way,

> It is the established rule of law in Texas that when the physical facts open to
> observation lead to a conclusion that the property in question is not the homestead
> of the mortgagor, and its use is not inconsistent with the representations made that
> the property is disclaimed as a homestead, and these representations were
> intended to be and were actually relied upon by the lender, then the owner is

estopped from asserting a homestead claim in derogation of the mortgage to secure the loan.

*Shearer v. Allied Live Oak Bank*, 758 S.W.2d 940 (Tex. App.—Corpus Christi 1988, writ denied) (citing *Prince v. North State Bank*, 484 S.W.2d 405, 411 (Tex. Civ. App.—Amarillo 1972, writ ref'd n.r.e.)); *Lane v. SBA* (*In re Lane*), 103 B.R. 816, 818 (Bankr. N.D. Tex. 1987).

Because Debtors' homestead use of the property was secret and highly ambiguous, their actual use was insufficient to notify a person like Showalter that the property was homestead. The Court finds that Debtors are estopped from claiming the homestead exemption in order to invalidate Showalter's lien.

Debtors argue that at the time the settlement agreement was entered into creating Showalter's lien on their property, Debtors did not understand that they were disclaiming the property as homestead. Of course, individuals are charged with reading and understanding documents before they sign them. Additionally, the lien documents were reviewed by Mr. Villarreal's counsel. "Knowledge acquired by an attorney during the existence of an attorney client relationship, and while acting in the scope of his or her authority, is imputed to the client." *McMahan v. Greenwood*, 108 S.W.3d 467, 481 (Tex. App.—Houston 2003, pet. denied). To the extent that Debtors' argument is an allegation that their attorney failed to properly consider the effect and accuracy of the homestead disclaimer, their complaint is with the attorney and not with Showalter.

Debtors also argue that they signed the settlement agreement under duress. However, "the threat to institute a civil suit or even the actual institution of a suit does not, as a matter of law, constitute duress." *Id.* 108 S.W.3d at 483 (citing *Cont'l Cas. Co. v. Huizar*, 740 S.W. 2d 429, 430 (Tex. 1987).

**Judicial Estoppel**

Alternatively, judicial estoppel is also relevant to the Showalter lien.

Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation. The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of the self interest. Importantly, because judicial estoppel is designed to protect the judicial system, not the litigants, detrimental reliance by the party opponent is not required.

*Superior Crewboats, Inc. v. Primary P & I Underwriters* (*In re Superior Crewboats, Inc.*), 374 F.3d 330, 334 (5th Cir. 2004) (citations omitted). *See also Hall v. GE Plastic Pacific PTE LTD.*, 327 F.3d 391, 396 (5th Cir. 2003).

The 5th Circuit requires three elements for judicial estoppel[1]: "(1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent." *Id.* at 335.

On April 24, 2007, counsel for Mr. Villarreal and Showalter announced in state court an agreement settling the lawsuits in Harris and Hidalgo Counties in which Mr. Villarreal was involved. During this settlement hearing, both sides intentionally represented that the agreement would settle all pending lawsuits in Harris and Hidalgo Counties. They also read onto the court record essential terms of the agreement, including the provision that Mr. Villarreal's $70,000 promissory note were to be secured by Greg's Ballroom via a deed of trust to be executed by Debtors. However, Mr. Villarreal and Showalter did not make any representations as to the homestead or non-homestead character of the property.

---

[1] The Fifth Circuit considers "judicial estoppel 'a matter of federal procedure' and therefore applies federal law." *Hall v. GE Plastic Pacific PTE LTD.*, 327 F.3d 391, 395 (5th Cir. 2003) (citing *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 600 (5th Cir. 1996); *see also Browning Manufacturing v. Mims* (*In re Coastal Plains, Inc.*), 179 F.3d 197, 205 (5th Cir. 1999).

Rule 11 of the Texas Rules of Civil Procedure governs the enforceability of settlement agreements.  TEX. R. CIV. P. 11.  *See also Padilla v. France*, 907 S.W.2d 454, 460 (Tex. 1995). Rule 11 states "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, *or unless it be made in open court and entered of record.*"  TEX. R. CIV. P. 11 (emphasis provided).

In this case, the settlement agreement complied with Rule 11.  It was made in open court and entered onto the record.  "Therefore, as a matter of law, it is an enforceable agreement." *Harco Energy, Inc. v. Anadrill* (*In re Harco Energy, Inc.*), 270 B.R. 658, 664 (Bankr. N.D. Tex. 2001).  *See also Kennedy v. Hyde*, 682 S.W.2d 525, 526 n.1 (Tex. 1984).  Because the lien is an essential part of the settlement agreement that was announced in open court and onto the record, the Court finds that it is a valid and enforceable part of the agreement.  As a result, Mr. Villarreal is judicially estopped from asserting that the lien is invalid in any way, including that it is invalid because it is against his and Mrs. Villarreal's homestead property.

Debtors argue that they were not present at the state court hearing when the settlement agreement was announced onto the court record.  As to Mr. Villarreal:

> A lawyer must have the consent of his client to settle a lawsuit.  Absent the client's consent, a settlement would not be enforceable.  But, Texas courts indulge every reasonable presumption in favor of a settlement made by an attorney duly employed, especially after accepted by a court.
>
> . . . If an attorney represents a party, then he is presumptively authorized to take all actions necessary to conduct that litigation.  Therefore, a court may rely on the representation of counsel of record that his clients agree to as settlement. Consequently, [the client] bear[s] the burden of establishing that [his] counsel lacked the authority to enter the settlement and present the settlement to the court.

*Harco Energy*, 270 B.R. at 667-68 (citations omitted).  Mr. Villarreal fails to demonstrate that he should be excused from the application of judicial estoppel by arguing that he was not present

19/21

when the settlement agreement was announced.  Instead, the facts show that Mr. Villarreal gave his consent, shown by his subsequent execution of the written settlement documents or by his ratification of the settlement agreement.

As to Mrs. Villarreal, she was not a party to the state lawsuits.  However, Mr. Villarreal's counsel represented in state court that Mrs. Villarreal would execute the deed of trust as part of the settlement agreement.  It is not clear from the record whether Mr. Villarreal's counsel also represented Mrs. Villarreal, and the burden of proof to demonstrate judicial estoppel rests on Showalter.  Accordingly, the Court does not find that Mrs. Villarreal is judicially estopped by her husband's lawyer's statements in state court.  Mrs. Villarreal never took a position in state court that is contrary to her position that the property is homestead.

The Court recognizes that the actions of one spouse often bind another.  However, in this case, the announced settlement agreement had the promissory note being executed only by the husband.  With such a demarcation between the husband and the wife being part of the announced settlement, the Court finds inadequate proof to bind Mrs. Villarreal through judicial estoppel.

For the reasons set forth above, the Court finds that Mr. Villarreal is judicially estopped from claiming Greg's Ballroom as his homestead.  However, judicial estoppel has not been proven against Mrs. Villarreal.  Because judicial estoppel does not apply to Mrs. Villarreal, the Court finds that the property could be claimed as homestead property by Mrs. Villarreal.  As a result, if an appellate court should overturn the Court's finding with respect to equitable estoppel, the Court would not apply judicial estoppel against Mrs. Villarreal and the property could be claimed as her homestead in this bankruptcy case.

### Conclusion

The Court finds that Debtors are equitably estopped from claiming the homestead exemption against the Showalter lien.  Although Mrs. Villarreal is not judicially estopped, that fact will only be of assistance to her should she prevail on appeal with respect to equitable estoppel.  Accordingly, the Showalter lien against the property is valid and enforceable.

The adversary proceeding seeks to determine whether the pre-petition foreclosure by Showalter was valid.  If Debtors prevail on that issue in the adversary proceeding, then the foreclosure would be avoided.  Still, Showalter's lien would remain against the property, unsatisfied, and his claim would be a secured claim in the bankruptcy case.

The Court's estoppel findings in favor of Showalter have no bearing on Trustee Boudloche's objections.  Trustee Boudloche was not misled by any statement, and estoppel is inapplicable.  However, if the pre-petition foreclosure is ultimately set aside in the adversary proceeding, then the property would be property of the bankruptcy estate and Debtors would be free to claim it as homestead as to Trustee Boudloche and all other claims except for Showalter's secured claim.  If the pre-petition foreclosure is upheld, then the property would not be part of the bankruptcy estate and Trustee Boudloche's objections would be moot.

The Court will issue separate orders.

Signed at Houston, Texas, on February 3, 2009.

MARVIN ISGUR
United States Bankruptcy Judge